UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA

       Plaintiff/Respondent,

                                    CASE NOS. 2:04-CR-80773
   v.                                      2:08-CV-13097
                                     JUDGE PAUL D. BORMAN
GEORGE STEVEN SCANTLAND,          MAGISTRATE JUDGE PAUL J. KOMIVES

       Defendant/Movant.

_____/

## REPORT AND RECOMMENDATION ON: (1) DEFENDANT'S MOTION TO UNSEAL GRAND JURY TRANSCRIPTS (docket #82); (2) DEFENDANT'S MOTION FOR NEW TRIAL (docket #85); (3) DEFENDANT'S MOTION TO VACATE SENTENCE (docket #87); and (4) DEFENDANT'S MOTION FOR DEFAULT JUDGMENT (docket #89)

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Motion for Default Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     C.    *Motion to Unseal Grand Jury Transcripts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     D.    *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.    *Motion to Vacate Sentence under § 2255* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
         2.    *Ineffective Assistance of Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . 14
             a. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
             b. Failure to Challenge Search Warrant . . . . . . . . . . . . . . . . . . . . . . . . 15
             c. Failure to Challenge Confrontation Violation . . . . . . . . . . . . . . . . . 21
             d. Failure to Subpoena Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             e. Failure to Remove Juror During Voir Dire . . . . . . . . . . . . . . . . . . . 26
             f. Failure to Move for Dismissal of Indictment . . . . . . . . . . . . . . . . . 28
             g. Failure to Challenge Firearms Convictions . . . . . . . . . . . . . . . . . . 30
             h. Failure to Advise Defendant of His Right Not to Testify . . . . . . . . . . . 34
             i. Failure to Challenge False Information Presented to Grand Jury . . . . . . . . . . . . . 35
         3.    *Ineffective Assistance of Appellate Counsel* . . . . . . . . . . . . . . . . . . . 37
         4.    *Prosecutorial Misconduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
             a. Exculpatory Evidence/Perjured Testimony . . . . . . . . . . . . . . . . . . . 38
             b. Witness Intimidation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
             c. Comments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
         5.    *Mandatory Minimum Sentence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
     F.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . 49
         1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

        2.       *Analysis* ........................................................ 51
    G.       *Conclusion* .......................................................... 52
III.       <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ...................................... 52

*       *       *       *       *

I.       <u>RECOMMENDATION</u>: The Court should deny defendant's motions to unseal grand jury

transcripts, for new trial, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255,

and for default judgment.  If the Court accepts this recommendation, the Court should also deny

defendant a certificate of appealability.

II.       <u>REPORT</u>:

A.       *Background*

        Defendant/movant George Steven Scantland is a federal prisoner, currently confined at the

Federal Correctional Institution in Elkton, Ohio.  In a four-count indictment filed in this Court on

October 5, 2004, defendant was charged with possessing with intent to distribute marijuana, 21

U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. §

924(c)(1)(A); being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and maintaining a

drug-involved premises, 21 U.S.C. § 856(a)(2).  On March 16, 2005, a First Superceding Indictment

was filed, charging an additional count of possessing with intent to distribute more than 5grams of

methamphetamine.

        Trial commenced on June 17, 2005.  Prior to the presentation of any evidence, the parties

entered three stipulations: (1) that defendant had a prior felony conviction; (2) that there was an

interstate nexus with respect to the firearms at issue; and (3) the chain of custody of the evidence.

*See* Trial Tr., dated 6/20/05, at 33-35.  The first witness for the government was Lieutenant Anthony

Greene of the Clinton Township Police Department.[1]  He testified that he received two anonymous tips that defendant was growing marijuana in his home at 35452 Ellen Street in Clinton Township. After corroborating the tip through a review of electric company billing records and thermography of the home, he obtained a warrant which the police executed on July 15, 2004.  The search recovered evidence of a marijuana growing operation, marijuana plants and packaged marijuana, a baggie containing methamphetamine, a baggie containing cocaine, drug paraphernalia, a ledger, and three firearms (a shotgun, an unloaded pistol, and a rifle).  In an interview, defendant admitted to growing the marijuana and possessing the methamphetamine, but appeared fearful to reveal where the methamphetamine had come from.  *See id.* at 35-110.  Detective George Tsourillis of the Sterling Heights Police Department and the Drug Enforcement Administration (DEA) narcotics task force testified that he was involved in the search of defendant's home.  He identified photographs depicting the marijuana growing operation and testified that he recovered the rifle found in defendant's home.  *See id.*, dated 6/21/05, at 97-126.[2]  Steve Rupkus of the Clinton Township Police Department testified that he was involved in the search and recovered a marijuana growing handbook, containers holding loose marijuana and drug paraphernalia, methamphetamine and cocaine, and a scale.  He also corroborated Lt. Greene's testimony regarding defendant's statement to Greene.  *See id.* at 144-61.

Fredericka Laux, a chemist with the DEA, was qualified as an expert and testified that she analyzed the methamphetamine recovered from defendant's home.  She determined that the

---

[1]At the time of the search, Greene was a sergeant.

[2]The prosecution first attempted to elicit from Tsourillis information regarding a thermographic scan of defendant's home that he had performed.  The Court disallowed this testimony, ruling that the Government had failed to establish a sufficient foundation for the admission of this scientific testimony.

substance was in fact methamphetamine, that it weighed 25.7 grams, and that it was 93% pure. *See id*. at 179-89. Detective Christopher Brown of the Las Vegas Police Department and the DEA task force in Las Vegas was qualified as an expert in narcotics trafficking. He testified about the general characteristics of the methamphetamine trade. The amount recovered from defendant's home was enough for 257 typical doses, which generally sell for $10 per dose. This amount was inconsistent with personal use. Further, the amount and packaging of marijuana indicated the marijuana was likewise intended for distribution, not personal use. The ledger found in defendant's home was consistent with the type of ledgers kept in the course of the drug trade. *See id*. at 192-218.

Detective David Solomon of the Clinton Township Police Department also testified that he was involved in the search of defendant's home. He identified various materials found in the home used in the growing of marijuana, including lights, watering and filtering equipment, timers, marijuana plants, and an indoor growing manual. He also identified receipts found in the home documenting the purchase of these pieces of equipment. Detective Solomon also recovered a ledger, $1463.00 in currency, and documents indicative of defendant's residence in the home. *See id*., dated 6/22/05, at 8-70. Detective Norman Graleski, Solomon's partner, likewise testified that he was involved in the search of defendant's home. In a safe, he found marijuana bags and a handgun, along with several boxes of ammunition in various calibers. Upon being asked by Graleski if there were any other drugs in the house, defendant indicated that there was methamphetamine in his closet, but that the methamphetamine did not belong to him. Graleski also identified various equipment involved in the marijuana growing operation and a video showing the growing operation recorded during the search. *See id*. at 123-60.

Steve Bailey, a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, testified

regarding a meeting he was involved in with defendant and defendant's counsel. At that time, defendant admitted that he owned the home and lived there by himself. He admitted to purchasing the shotgun recovered by the police for home protection, and the rifle for deer hunting. He claimed that he was holding the pistol for a friend, Mark Fisher. He admitted to selling marijuana for Charlie McCarthy, who he claimed was in the Devil's Disciples motorcycle gang. He also admitted to selling methamphetamine one time to Fisher, but claimed that the methamphetamine belonged to McCarthy. Neither Fisher's nor McCarthy's fingerprints were found on any of the items seized from defendant's home. *See id*. at 219-37; *id*., dated 6/23/05, at 23-61.

Defendant's defense at trial was essentially that Charlie McCarthy was the police informant, and that he made out defendant to be a major drug dealer for his own gain. To this end, he arranged to have defendant hold McCarthy's methamphetamine to "up the ante." He also argued that the search was improper and that the case was dismissed in state court and transferred to the Government when questions arose in the state court regarding the validity of the state's case. Defendant argued that, contrary to the assertion of the police that they had no knowledge of any methamphetamine but were solely concerned with marijuana, they were specifically looking for methamphetamine when they entered his home. *See id*., dated 6/30/05, at 40-71 (defense closing argument). In support of this defense, defendant called John Russi, the state court magistrate who issued the warrant. Magistrate Russi testified that he had no specific recollection of the search warrant for petitioner's home. He testified that, under Michigan law, the executing officer is required to file a search warrant return, but that he has no involvement in that process. Contrary to Lt. Greene's testimony, he denied telling Greene that a search warrant return was not required to be filed. *See id*, dated 6/23/05, at 192-98. Michael Kavanagh, an attorney who represented defendant

for a brief period, testified that defendant brought to him a container holding a black liquid, found after defendant returned home following the search, which turned out to be a field-test kit for methamphetamine. *See id*. at 201-04.

Defendant testified on his own behalf. According to defendant, he met McCarthy through a friend, Fisher. McCarthy was the Vice President of the Devil's Disciples motorcycle gang. He testified that the pistol and drugs were brought into his home by Fisher or McCarthy. He admitted to selling marijuana to a small group of friends, but testified that he did not become involved in any drug trafficking until he met McCarthy. McCarthy brought the methamphetamine to his home and asked him to store it; defendant never sold methamphetamine. The cocaine found in his home was for personal use. When the police entered defendant's home, Lt. Greene immediately asked him where the methamphetamine was located. He repeatedly told the police about McCarthy's involvement, but the police were uninterested and did not investigate his claims further. *See id*., dated 6/24/05, at 36-103.[3]

Following closing arguments and instructions from the court, the jury returned a verdict finding defendant guilty on all five counts charged in the indictment. *See id*., dated 6/30/05, at 131-32. Following his conviction, defendant filed a *pro se* motion for hearing regarding ineffective assistance of counsel. The Court appointed new counsel for defendant on February 22, 2006. At a March 20, 2006, status conference, the Court reserved ruling on the motion pending newly-appointed counsel's decision whether to proceed with the motion, but indicated that the Court would not permit defendant to file a motion for new trial, as the seven day period for filing such a motion

---

[3]Defendant also attempted to call as witnesses Edward Daughtry and McCarthy. After consulting with counsel, both witnesses invoked their Fifth Amendment privilege against self-incrimination and declined to testify. *See* Trial Tr., dated 6/23/05, at 232-33; *id*., dated 6/24/05, at 28-30.

had elapsed.  *See* Status Conf. Tr., dated 3/20/06.  It does not appear that counsel further pursued this matter.  On November 20, 2006, defendant appeared for sentencing, and on November 28, 2006, the Court entered its Judgment of Sentence, imposing a sentence of 60 months' imprisonment on the marijuana conviction (Count 1), concurrent sentences of 120 months' imprisonment on the methamphetamine, felon in possession, and drug premises convictions (Counts 3-5), and a consecutive sentence of 60 months' imprisonment on the § 924(c) conviction (Count 2), for a total term of 180 months' imprisonment.  Defendant, through counsel, filed an appeal in the United States Court of Appeals for the Sixth Circuit, raising claims "that his trial counsel was ineffective in negotiating a plea bargain, preparing him to testify, pursuing defense theories that ultimately failed, and failing to bring a pre-trial motion to challenge the police search warrant."  *United States v. Scantland*, 276 Fed. Appx. 422, 422 (6th Cir. 2008) (per curiam).  Concluding that these claims were more appropriately brought in a motion to vacate pursuant to 28 U.S.C. § 2255, the court affirmed defendant's convictions and sentence.  *See id.* at 422-23.

This matter is currently before the Court on several motions filed by defendant.  On January 10, 2008, defendant filed a motion to unseal grand jury transcripts.  In this motion, defendant seeks an Order unsealing the grand jury transcripts in this case to allow him to pursue postconviction relief.  On May 12, 2008, defendant filed a motion for new trial pursuant to FED. R. CRIM. P. 33.  In this motion, defendant contends that he has new evidence that Lt. Greene lied in his search warrant affidavit, justifying a new trial.  On July 17, 2008, defendant filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, asserting claims of invalid indictment; ineffective assistance of trial counsel; ineffective assistance of appellate counsel; illegal search; denial of impartial jury, right to compulsory process, right to confrontation, and discovery of exculpatory evidence; and

prosecutorial misconduct.  In response to the government's motion to strike his § 2255 motion, defendant filed an amended motion on April 8, 2010.  Defendant also filed two additional motions to amend, seeking to add a claim that his sentencing was improper.  These motions have been granted by separate order entered this date.  Finally, on July 28, 2008, defendant filed a motion for default judgment.  For the reasons that follow, the Court should deny all of defendant's motions.

B.    *Motion for Default Judgment*

Defendant seeks a default judgment based on the Government's failure to respond to his various motions, in particular his motion to unseal the grand jury transcripts.  The Court should deny this motion.

Unlike an ordinary civil case, a habeas corpus proceeding implicates interests beyond those of the parties, and thus default judgment is inappropriate.  As explained by the Second Circuit:

> But we cannot ignore the fact that a habeas petition is not an ordinary civil proceeding. The guilt of the petitioner . . . has been adjudicated in a state court by the verdict of a jury. This conviction has been unanimously affirmed by an appellate court. In addition, two post-conviction motions have been considered and denied by the state trial court. Whatever may be the merits of [petitioner's] claims, there is presumption that the state court judgment, pursuant to which he has been imprisoned, is valid until there is some showing that by constitutional standards it is not. 28 U.S.C. §§ 2241(c)(3), 2254(a); *see Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963).
>
> That fact does not justify denying him, as the State's actions have done here, a prompt opportunity to meet his burden of proof. But in deciding what means are appropriate to the district court to secure that opportunity, we cannot ignore the reality that most habeas petitioners have been convicted of serious offenses, and considerably less than five percent of petitions result in the granting of the writ. Under the circumstances, were district courts to enter default judgments without reaching the merits of the claim, it would be not the defaulting party but the public at large that would be made to suffer, by bearing either the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them. In this respect, default in habeas proceedings differs from default in other civil cases[.]

*Bermudez v. Reed*, 733 F.2d 18, 21-22 (2d Cir. 1984).  Thus, "[a] default judgment is unavailable

in a habeas corpus proceeding on the ground that state officials fail to file a timely response to the petition." *Mahady v. Cason*, 222 F. Supp. 2d 918, 921 (E.D. Mich. 2002) (Cohn, J.); *see also*, *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("The burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner. The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof. Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings."); *Alder v. Burt*, 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003) (Gadola, J.).

Although these cases arise in the context of habeas petitions brought by state prisoners, their reasoning is equally applicable in § 2255 cases brought by federal prisoners. *See Watkins v. United States*, No. 2:08-cv-1053, 2009 WL 2168790, at *1 (S.D. Ohio July 16, 2009); *United States v. Dill*, 555 F. Supp. 2d 514, 521 (E.D. Pa. 2008). Moreover, to the extent that Federal Rule of Civil Procedure 55, which provides for default judgments, is applicable here, by its terms the rule bars entry of a default judgment. *See* FED. R. CIV. P. 55(d) ("A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."); *Dill*, 555 F. Supp. 2d at 520. Accordingly, the Court should deny defendant's motion for default judgment.

C.      *Motion to Unseal Grand Jury Transcripts*

In his motion to unseal grand jury transcripts, defendant seeks an Order unsealing the transcripts so that he can conduct "a proper evaluation of the hearing and to file the appropriate writs available for defendant's appealable [sic] right." Memo. in Support of Mot. to Unseal, at 1. Defendant does not identify any particular claims or facts which he believes a review of the grand jury transcripts will uncover. The Court should deny this motion.

Federal Rule of Criminal Procedure 6(e) provides detailed provisions for maintaining the secrecy of grand jury proceedings, allowing disclosure of such matters only in carefully defined circumstances. *See* FED. R. CRIM. P. 6(e)(2), (3). As relevant here, the rule provides that "[t]he court may authorize disclosure–at a time, in a manner, and subject to any other conditions that it directs–of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." FED. R. CRIM. P. 6(e)(3)(E)(ii). The rule also provides that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." FED. R. CIV. P. 6(e)(6). Rule 6 codifies "the 'long-established policy that maintains the secrecy of grand jury proceedings in the federal courts.'" *Dennis v. United States*, 384 U.S. 855, 869 (1966) (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 (1958)). Under the rule, "[t]he burden is on the defense to show that 'a particularized need' exists for the [transcripts] which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).

Here, defendant has failed to show a particularized need for the grand jury transcripts. He asserts only that the transcripts are necessary to evaluate the proceedings and determine if he has any claims arising from the grand jury proceedings. He does not identify any particular defects in the grand jury proceeding itself, nor does he identify any particular claims which disclosure of the grand jury proceedings may provide. Defendant "has not pointed to anything in the record which might suggest that the prosecution engaged in improper conduct before the grand jury. His claims on this point, therefore, amount to nothing more than unsupported speculation, and this is not enough to constitute a 'particularized need.'" *United States v. Edelson*, 581 F.2d 1290, 1291 (7th

Cir. 1978); *see also*, *United States v. Short*, 671 F.2d 178, 187 (6th Cir. 1982) ("A general claim . . . that disclosure of grand jury transcripts would reveal exculpatory evidence is not sufficient to satisfy the requirement of showing particularized need."); *Smith v. United States*, 380 F. Supp. 2d 973, 975 (N.D. Ill. 2005); *cf. Pittsburgh Plate Glass*, 360 U.S. at 400-01. Accordingly, the Court should deny defendant's motion to unseal the grand jury transcripts.

D.    *Motion for New Trial*

In his motion for new trial, defendant contends that newly discovered evidence establishes that Lt. Greene lied in the search warrant affidavit, and that this newly discovered evidence entitles him to a new trial. The Court should deny the motion for new trial.

1.    *Legal Standard*

Rule 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Motions for new trial based on newly discovered evidence are disfavored. *See United States v. Hawkins*, 969 F.2d 169, 175 (6th Cir. 1992). "To be granted a new trial due to newly discovered evidence, the defendant must show that: (1) the new evidence was discovered after trial; (2) the evidence could not have been discovered with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994); *Hawkins*, 969 F.2d at 175.

2.    *Analysis*

Before analyzing defendant's claim, a brief background relating to the search of his home is appropriate. On June 15, 2004, Lt. Greene swore out an affidavit for search warrant before state court Magistrate Russi, seeking billing records from DTE Energy, based on two anonymous tips he

had received.  *See* Def.'s § 2255 Mot., App. D (Ground Four), Ex. 6.  On July 14, 2004, Lt. Greene swore out a second affidavit, seeking a search warrant authorizing thermographic imaging of defendant's home based again on the two anonymous tips, as well as his review of the energy usage shown in the DTE records.  *See id.*, Ex. 7.  Based in part on the results of these two warrants, Lt. Greene swore out the affidavit for a physical search of defendant's home.

Defendant now points to the DTE Energy billing records which he obtained from the government, which indicate billing periods covering October 20, 2002, through October 20, 2004. Because these records go through October 2004, defendant contends that Lt. Greene could not have obtained them in July 2004 as indicated in his affidavit in support of the search warrant for defendant's home.  He contends that this constitutes newly discovered evidence entitling him to a new trial under Rule 33.  The Court should disagree.

Although the exhibits attached to defendant's motion and reply are difficult to read, the following can be made out.  In one exhibit attached to his reply, which is apparently a computer generated report of the DTE billing, the "transaction date" is indeed from October 20, 2002, to October 20, 2004.  In the second exhibit attached to the reply, however, the "transaction date" is December 24, 2003, to June 24, 2004.  And as defendant himself notes, "the same records were also retrieved by an agent of the A.T.F. on Oct. 12, 2004, as recorded in a [D]epartment of Justice daily log[.]" Mot. for New Trial, at 1.  A single printout covering dates past July 2004 does not necessarily call into question Lt. Greene's testimony at trial or statements in his affidavit that he obtained and reviewed those records prior to preparing the warrant affidavit for the search of petitioner's home. Even if this evidence could be considered newly discovered, it is not the type of evidence on its own which would have called into question the validity of the search, and thus is not likely to have

produced an acquittal. Accordingly, the Court should deny defendant's motion for a new trial.

E. *Motion to Vacate Sentence under § 2255*

In his amended motion to vacate, defendant raises three grounds for relief. In Ground One, defendant contends that trial counsel was ineffective in several respects. In Ground Two, he contends that his appellate counsel was ineffective. And in Ground Three, he contends that he was denied a fair trial by prosecutorial misconduct and malicious prosecution. In his September 13, 2010, request for leave to amend, which has been granted on this date, defendant adds an additional ground challenging the five year mandatory sentence imposed based on his violation of 18 U.S.C. § 924(c).

1. *Legal Standard*

The substantive provisions of § 2255, which were not altered by the more recently enacted Antiterrorism and Effective Death Penalty Act of 1996, provide that a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255 para. 1. Thus, a defendant may be entitled to § 2255 relief if his conviction or sentence violates either the Constitution or a federal statute. However, In order to obtain relief under § 2255 on the basis of a nonconstitutional–*i.e.*, statutory or rule–error, the record must reflect a fundamental defect in the proceedings which inherently causes a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 348 (1994) (Ginsburg, J.); *id.* at 355-56 (Scalia, J.); *United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993) (per curiam). As the Seventh Circuit recently explained:

> Where "mere statutory violations are at issue," as here, the Supreme Court has recently held that § 2255 can only avail a petitioner if the alleged error spawned a "'fundamental defect which inherently results in a complete miscarriage of justice.'" Federal courts lack the power under § 2255 to rectify errors that fall short of "vitiat[ing] the sentencing court's jurisdiction or are otherwise of constitutional magnitude."

*Broadway v. United States*, 104 F.3d 901, 903 (7th Cir. 1997) (quoting, respectively, *Reed*, 114 S. Ct. at 348 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)) (citations omitted), and *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993)) (citations omitted) (alteration in original).

2.    *Ineffective Assistance of Trial Counsel*

In his first ground for relief, defendant contends that his trial counsel rendered constitutionally ineffective assistance. Specifically, he contends that counsel was ineffective for failing to: (1) challenge the search of his home; (2) raise a Confrontation Clause violation; (3) subpoena witnesses; (4) remove a juror for cause; (5) move for dismissal of the indictment; (6) advise him of his right not to testify; and (7) challenge false information presented to the Grand Jury. The Court should conclude that defendant is not entitled to relief on these claims.

a.  *Legal Standard*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

### b. Failure to Challenge Search Warrant

Defendant first contends that trial counsel was ineffective in failing to challenge the search warrant which resulted in the search of his home. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Because defendant has failed to establish a meritorious Fourth Amendment claim, the Court should conclude that defendant is not entitled to relief on this claim.

As the Supreme Court has explained, "probable cause is a fluid concept–turning on the

assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1981). In determining whether probable cause for a search exists, a court applies a "totality of the circumstances" test. *See id.* at 230. The inquiry under this test is necessarily fact-driven, and the court must evaluate the officers' actions in accordance with the "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). A finding of "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 243-44 n.13. Here, there were three "searches" conducted by the police: the search of defendant's electrical records, the thermal imaging of defendant's home, and the physical search of defendant's home. Defendant cannot show that any of the three was improper.

First, although a warrant was obtained for the electrical records, the Court need not consider whether that warrant was supported by probable cause because a warrant was not required to obtain those records. Under the Fourth Amendment, "[a] 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The Supreme "Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976). Because defendant's electrical usage was revealed to DTE Energy and the records were kept in the ordinary course of DTE's business, defendant had no reasonable expectation of privacy in those records and the police required neither a warrant nor probable cause

to obtain those records from DTE. *See United States v. McIntyre*, 683 F. Supp. 2d 1020, 1026 (D. Neb. 2010); *United States v. Hamilton*, 43 F. Supp. 2d 974, 979 (D. Or. 2006); *United States v. Porco*, 842 F. Supp. 1393, 1398 (D. Wyo. 1994), *aff'd on other grounds*, 83 F.3d 1247 (10th Cir. 1996) (en banc).

In the affidavits for the both the thermal imaging and physical search of defendant's home, Lt. Greene averred that he had received two anonymous tips, that he had verified the personal and residence information provided by those tips; that he obtained the electric usage records for the home and two other homes for comparison; and that the electric usage for defendant's home was significantly higher than for the other homes. Although the anonymous tips alone may not have sufficed to establish probable cause, when coupled with the corroboration done by Lt. Greene and the electric records, the totality of the circumstances provided probable cause for both a thermal imaging and a physical search. *See United States v. Thomas*, 605 F.3d 300, 308 (6th Cir. 2010); *United States v. Clay*, 521 F. Supp. 2d 633, 639 (W.D. Mich. 2007). And the properly conducted thermal imaging provided additional support for a finding of probable cause to conduct the physical search. *See United States v. Costa*, 264 Fed. Appx. 564, 565-66 (9th Cir. 2008).[4]

Further, even if Lt. Greene's affidavits are insufficient to establish probable cause, defendant cannot show that a motion to suppress would have been successful. Under the good faith exception to the exclusionary rule, suppression is not an appropriate remedy for a Fourth Amendment violation

---

[4]Defendant asserts that the results of the thermal imaging were suppressed by the Court. He points to, and I have found, nothing in the record of this case which supports this assertion. The Court did sustain defense counsel's objection to Detective Tsourillis's testimony concerning the thermal imaging, but this ruling had nothing to do with the validity of the thermal imaging search under the Fourth Amendment. Rather, the Court merely concluded that the government had failed to establish the prerequisites for the admission of scientific evidence under Rule 702. *See* Trial Tr., dated 6/21/05, at 113-14.

where the police act with objectively reasonably reliance on a warrant issued by a neutral and detached magistrate. *See United States v. Leon*, 468 U.S. 892, 922 (1984). Here, both the thermal imaging and the physical search of defendant's home were conducted pursuant to warrants appearing valid on their face. Even if the information supplied by Lt. Greene was insufficient to establish probable cause, the information (consisting of the anonymous tip and electrical usage records) was not so lacking as to make Lt. Greene's reliance on the properly issued warrants objectively unreasonable. *See Thomas*, 605 F.3d at 311; *United States v. Clark*, 31 F.3d 831, 835-36 (9th Cir. 1994); *Clay*, 521 F. Supp. 2d at 640-41; *United States v. Capozzi*, 73 F. Supp. 2d 75, 80 (D. Mass. 1999).[5] Thus, defendant cannot show a reasonable probability that a motion to suppress based on a lack of probable cause would have succeeded.

Defendant also contends that counsel erred in failing to seek a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In *Franks*, the Court held that where a defendant shows by a preponderance of the evidence that "a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the . . . false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56. Thus, to establish a claim under *Franks* a defendant must establish three elements: "(1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement 'knowingly and intentionally or with reckless disregard for the truth'; and (3) without the false statements, the remainder of the affidavit is insufficient to

---

[5]The good faith exception is inapplicable where the officer knowingly or reckless submits false information in the warrant application, because in such a case the officer cannot be deemed objectively reasonably in relying on the warrant. *See Leon*, 468 U.S. at 923. Defendant's claim that the affidavits contained false statements is addressed below.

establish probable cause." *Delta Eng'g v. United States*, 41 F.3d 259, 262 (6th Cir. 1994). Importantly, to satisfy the second element it is not sufficient that the affiant make a negligent misstatement; to establish a *Franks* violation petitioner must show that the omission was either deliberate or reckless. *See Atkin*, 107 F.3d at 1217; *United States v. Reivich*, 793 F.3d 957, 960 (8th Cir. 1986). *See generally*, *Franks*, 438 U.S. at 171. Where the first two elements are shown, the third element of the *Franks* test requires the reviewing court to view the affidavit as if the false statements were not included. If the affidavit, so read, nevertheless establishes probable cause for a search, the petitioner's *Franks* claim fails. *See United States v. Keszthelyi*, 308 F.3d 557, 566-67 (6th Cir. 2002); *United States v. Graham*, 275 F.3d 490, 506-07 (6th Cir. 2001). *See generally*, *Franks*, 438 U.S. at 171-72.

Much of defendant's *Franks* argument is based on the fact that, in his affidavits, Lt. Greene indicated that he had received two anonymous "tips," whereas the information came in the form of written letters. However, nothing in Lt. Greene's use of the word "tip" is inconsistent with the tips having come in the form of written letters. A tip is merely "a piece of advance or confidential information given by one thought to have access to special or inside sources." MERRIAM-WEBSTER ONLINE DICTIONARY, available at www.merriam-webster.com/dictionary/tip, def. 7. Nothing in the definition or usage of tip suggests any distinction between tips communicated orally and those communicated in writing, and Lt. Greene's use of the word "tip" was not inconsistent with his having received anonymous letters. Thus, Lt. Greene's affidavit was not false at all in this respect, much less knowingly or recklessly false.

Defendant also claims that Lt. Greene's affidavits were false in asserting that he had reviewed the electrical usage records. In support of this claim, defendant points to his copy of the

warrant, the return for which is not filed out.  Notably, however, the search warrant did not require a seizure of any property held by DTE, the information ordinarily filled out on the warrant return, but only copies of records.  Defendant's assertion that Lt. Greene had not in fact reviewed those records is belied by the fact that the affidavit in support of the warrant application for the physical search accurately recounts the electric usage reflected in those bills.  Defendant's speculation that Lt. Greene did not in fact obtain the DTE records is insufficient to establish that a *Franks* hearing would have been warranted, much less successful.

Defendant also claims that Lt. Greene lied in the affidavit by stating that he had run a criminal history check on defendant and discovered previous controlled substance and firearms convictions.  In support of this claim, defendant points to the computer print-out of his criminal history, which was run on July 16, 2004, the day after the warrant was executed.  However, the fact that a print-out was not made until July 16 does not support the conclusion that Lt. Greene did not run the check on the computer to verify defendant's criminal history.  Indeed, as with the electrical records defendant does not contend that any of Lt. Greene's averments regarding his criminal history are inaccurate.  It would be highly improbable that Lt. Greene would have been able to set forth correctly defendant's criminal history, including each count, court, and date of conviction, as well as defendant's identification number in the lien system, had he not in fact run the criminal history check as averred.  In short, defendant has pointed to no evidence which raises even a suspicion that Lt. Greene's affidavits contain deliberate or reckless falsehoods that would have supported holding a *Franks* hearing; much less has he shown a reasonable probability that such a hearing would have resulted in the suppression of evidence seized during the search of his home.  Thus, defendant

cannot show that counsel was ineffective for failing to move to suppress the fruits of the search.[6]

### c. Failure to Challenge Confrontation Violation

Defendant next contends that counsel was ineffective for failing to raise at trial a violation of his Sixth Amendment right to confront the witnesses against him. Defendant's claim is based on the anonymous tips received by the police which ultimately lead to the search of defendants home. Defendant contends that the reliance on these tips without an opportunity for him to learn the identity of and cross-examine the informants denied him due process and his right to confront the witnesses. He therefore argues that counsel was ineffective for failing to secure the identity of these informants and moving to dismiss the case. The Court should conclude that defendant is not entitled to relief on this claim.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. Here, the Confrontation Clause is not implicated because the informants did not testify at trial. By its terms the Confrontation Clause applies only to the witnesses, and "a defendant has no right to confront an informant who provides no evidence at trial." *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir. 1984); *accord Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985); *McAllister v.*

---

[6]Defendant also claims that the evidence was subject to suppression because he was not given copies of the anonymous letters or the identify of the tipster. As explained in the following section, defendant was not entitled to this information, particularly in connection with a motion to suppress evidence.

*Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977) (per curiam).  While it is true that the introduction of testimonial hearsay by a witness not testifying at trial may amount to a denial of the right to confront the witnesses against a defendant, *see Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), defendant has identified no hearsay statements made by the confidential informants that were introduced at trial.  And the use of the confidential informant statements in the search warrant affidavits or before the Grand Jury does not implicate the Confrontation Clause because, as explained above, the Clause protects a right to confront witnesses at trial. *See United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) ("It is well established that a magistrate may rely on hearsay contained in the affidavit when determining whether to issue a search warrant.").  *See generally*, *Barber v. Page*, 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a trial right.").  Thus, counsel was not deficient for failing to protect defendant's right to confront the witnesses.

Nor can defendant show that counsel was ineffective for failing to obtain the identity of the informants.  In *Roviaro v. United States*, 353 U.S. 53 (1957), the Court held, after discussing the history of the confidential informer privilege, that "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60.  A court faced with the issue must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62.  To the extent that defendant is claiming that the informant's identity should have been disclosed at the preliminary examination or in connection with his suppression motion, his claim is foreclosed by the Supreme Court's decision in *McCray v. Illinois*, 386 U.S. 300 (1967).  In that decision, the Court observed:

> What *Roviaro* thus makes clear is that this court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating

> evidentiary rules for federal criminal trials. Much less has the Court ever approached
> the formulation of a federal evidentiary rule of compulsory disclosure where the
> issue is the preliminary one of probable cause, and guilt or innocence is not at stake.

*McCray*, 386 U.S. at 311; "Thus, as the law comes down to us now, disclosure of an informant's identity is not required at a preliminary hearing to determine probable cause[.]" *Hawkins v. Robinson*, 367 F. Supp. 1025, 1034 (D. Conn. 1973); *accord Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992); *State v. Mertens*, 268 N.W.2d 446, 452 (N.D. 1978); *see also*, *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990) (no right to disclosure of informer's identity at pretrial suppression hearing). Nor can defendant show that counsel was ineffective for failing to obtain the informant's identity at trial, because counsel attempted to do so. During cross-examination of Lt. Greene, defense counsel inquired into the letters. Upon objection by the prosecutor, defense counsel strenuously argued that the identify of the informant and the letters themselves were relevant and should be disclosed. The Court ordered the prosecutor to submit the letters to the Court for *in camera* review. *See* Trial Tr., dated 6/21/05, at 5-13. Upon reviewing the letters, the Court concluded that (a) the contents could lead to the disclosure of the informant's identity and result in harm to the informant, and (b) the letters contained no relevant information. *See id.* at 40. Defendant does not assert what more counsel should have done at this point, nor does he offer any reason to question the Court's finding that the letters contained no relevant, admissible evidence. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### d. Failure to Subpoena Witnesses

Defendant next claims that counsel was ineffective for failing to subpoena various witnesses. Specifically, defendant claims that counsel should have called an employee of DTE Energy, Lt. Ostin of the Clinton Township Police Department, and ATF Agent Roger Clemons. The Court

should conclude that defendant is not entitled to relief on this claim.

"Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is defendant's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (defendant bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Here, defendant has failed to provide any proffer, by affidavit or otherwise, that the witnesses

he contends counsel should have called would have testified at trial, or what their purported testimony would have shown. Nor can defendant show that counsel was ineffective even accepting his characterization of what these witnesses could have shown. Defendant contends that counsel should have called at trial an employee of DTE Energy to testify that the search warrant for his electrical usage records did not exist. However, the record is clear that such a warrant did exist, as defendant himself has attached a copy of the affidavit and warrant to his motion. Further, as explained above there is nothing to suggest that the warrant was not in fact served on DTE Energy, and in any event a warrant was not required to obtain defendant's electrical usage records.

Defendant also contends that counsel should have called Lt. Ostin of the Clinton Township Police Department. He asserts that at the time of trial Lt. Ostin was under investigation for fabricating evidence in another case. He further argues that counsel should have called ATF Agent Roger Clemons, who could have testified that Lt. Ostin was present during the search and opened defendant's safe. Defendant contends that the failure to call these witnesses prevented him from showing that Lt. Greene and other officers perjured themselves to protect Lt. Ostin. However, he has failed to show how Lt. Ostin's alleged misconduct in a wholly unrelated case would have been relevant and admissible at his trial. *See United States v. Nash*, 482 F.3d 1209, 1217 (10th Cir. 2007). And indeed counsel attempted to elicit this information on cross-examination of Lt. Greene, but the Court ruled that evidence of Lt. Ostin's conduct in the unrelated case was irrelevant. *See* Trial Tr., dated June 23, 2005, at 223-25. Nor can defendant show a reasonably probability that counsel's exploration of these matters, if permitted, would have resulted in an acquittal. Despite defendant's attempts to paint a picture of a grand conspiracy to convict him, the facts of the case were simple: a quantity of drugs and guns were found in his home, facts which he readily admitted (albeit in

attempting to explain away the charges) both in his interviews with the police and in his testimony at trial. Defendant therefore cannot show that he was prejudice by counsel's failure to explore these matters at trial. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### e. Failure to Remove Juror During Voir Dire

Defendant next argues that counsel was ineffective for failing to remove a biased juror during *voir dire*. Specifically, he contends that counsel was ineffective for failing to challenge Juror 5, whose wife was related to a Clinton Township Police Department captain. The Court should conclude that defendant is not entitled to relief on this claim.

During *voir dire*, Juror 5 indicated that his wife's uncle is a Clinton Township Police Department captain. *See* Trial Tr., dated 6/17/05, at 75. He saw his uncle-in-law monthly. *See id.* The Court asked whether the fact that this case involved Clinton Township police officers would prevent Juror 5 from being fair. Juror 5 responded that because his uncle-in-law was not involved, he could be fair and scrutinize the witnesses the same. *See id.* at 76. Upon questioning from defense counsel, Juror 5 indicated that he had never spoke to his uncle-in-law about the case and was not familiar with the case. He also indicated that he knew no other people in the Clinton Township Police Department, and he would not view the police witnesses as more believable than any other witness. *See id.* at 96. Defense counsel asked whether he could, if the evidence convinced him that the defendant was not guilty, go back to his uncle and say that he found the defendant not guilty because that is what the facts suggested. Jury 5 responded, "absolutely." *See id.* at 96-97.[7]

"[J]ury selection is a process that inherently falls within the expertise and experience of trial

---

[7]As this exchange demonstrates, contrary to defendant's argument counsel did question Juror 5 to inquire into his bias.

counsel." *Palacio v. State*, 511 S.E.2d 62, 67 (S.C. 1999) (citing cases). Because of this, counsel's decisions in the jury selection process are the type of strategic decisions which are particularly difficult to attack. *See Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989); *Cordova v. Johnson*, 993 F. Supp. 473, 530 (W.D. Tex.) (footnote omitted) (internal quotation omitted) ("Selecting a jury is more art than science. There is nothing unreasonable or professionally deficient in a defense counsel's informed decision to rely upon his own reading of venire members' verbal answers, body language, and overall demeanor[.]"), *aff'd*, 157 F.3d 380 (5th Cir. 1998). Here, defendant has offered nothing to suggest that counsel's decision to keep Juror 5 on the panel was anything other than trial strategy based on his assessment of Juror 5's ability to render a fair verdict. Accordingly, this Court should not second-guess counsel's judgment.

Further, defendant cannot show that he was prejudiced by counsel's failure to remove Juror 5 from the panel. In order to establish prejudice attributable to a counsel's failure to remove a juror, defendant must show that the juror was actually biased. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001); *Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *Irons v. Lockhart*, 741 F.2d 207, 208 (8th Cir. 1984); *Parker v. Turpin*, 60 F. Supp. 2d 1332, 1362 (N.D. Ga. 1999); *Odle v. Calderon*, 919 F. Supp. 1367, 1389 (N.D. Cal. 1996). Here, defendant has offered nothing to demonstrate that Juror 5 was actually biased against him. Juror 5 repeatedly affirmed that he could decide the case based on the evidence, and would not judge the police witnesses more favorable than any other witness. The Court presumes that these statements were truthful, and defendant has pointed to nothing to call into question the sincerity of Juror 5's assurance. *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (question in case of juror bias is whether juror swore "that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation

of impartiality have been believed."); *Howard v. Davis*, 815 F.2d 1429, 1431 (11th Cir. 1987) (habeas relief not warranted on petitioner's claim of juror bias where juror stated he could be impartial despite his relationship with the victim). Second, Juror 5's relationship with a police officer who was not involved in the case does not alone demonstrate bias. "Courts will not presume bias simply because a juror works in law enforcement, is related to someone working in law enforcement or is acquainted with law enforcement personnel." *King v. Hedgpeth*, No. CIV S-08-1524, 2010 WL 2698609, at *21 (E.D. Cal. July 07, 2010) (citing *United States v. Le Pera*, 443 F.2d 810, 812 (9th Cir.1971); *United States v. Caldwell*, 543 F.2d 1333, 1347 (D.C.Cir.1974); *Mikus v. United States*, 433 F.2d 719, 723-24 (2d Cir.1970)); *see also*, *United States v. West*, 458 F.3d 1, 8-9 (D.C. Cir. 2006); *United States v. Graves*, 418 F.3d 739, 743 (7th Cir.2005). Because there is nothing to indicate that Juror 5 was actually biased, and because there is no basis for implying that he was, defendant cannot show that he was prejudiced by counsel's failure to challenge Juror 5 for cause. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### *f. Failure to Move for Dismissal of Indictment*

Defendant next contends that counsel was ineffective for failing to move for dismissal of the Indictment. Defendant contends that the Indictment was subject to dismissal pursuant to 18 U.S.C. § 3162, which in relevant part provides that "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). Section 3161(b), in turn, provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days

from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Here, the Court's docket reveals that the complaint was filed on September 20, 2004, and defendant was arrested and temporarily detained on September 21, 2004. The indictment was returned on October 5, 2004, within 30 days of his initial arrest on September 21, 2004. Thus, there was no violation of § 3161(b), and counsel cannot be deemed ineffective for failing to raise a meritless challenge to the timing of the Indictment.

To the extent defendant claims that the First Superceding Indictment was untimely, his claim is likewise without merit. The 30-day period in § 3161(b) applies only to the filing of an initial indictment. A subsequent, superceding indictment does not violate § 3161(b) merely because it is filed more than 30 days after arrest, even if the superceding indictment adds new charges. *See United States v. Komolafe*, 246 Fed. Appx. 806, 809 (3d Cir. 2007); *United States v. Hemmings*, 258 F.3d 587, 591-92 (7th Cir. 2001) (citing cases). Nor did defendant's July 15, 2004, arrest by state law enforcement officers on state charges trigger § 3161(b). An "offense" as used in § 3161(b) is "any Federal criminal offense." 18 U.S.C. § 3172. Thus, it is well established that only a federal arrest on federal charges, and not a state arrest on parallel state charges, triggers § 3161(b). *See United States v. Jemison*, 310 Fed. Appx. 866, 873 (6th Cir. 2009); *United States v. Blackmon*, 874 F.2d 378, 381 (6th Cir. 1989). Accordingly, counsel was not ineffective for failing to move to dismiss the indictment.

### g. Failure to Challenge Firearms Convictions

Defendant next contends that counsel was ineffective for failing to challenge Count Four of the Superceding Indictment, which charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Defendant contends that, by the time of his arrest by state

authorities on July 15, 2004, his civil rights, and in particular his right to possess firearms, had been restored, and thus he could not have been charged with and convicted of violating § 922(g)(1). However, because defendant's right to possess a firearm had not been restored, counsel was not ineffective in failing to challenge the § 922(g)(1) count on this basis.

"Under federal law, a person convicted of a crime punishable by more than one year in prison may not possess any firearm." *Caron v. United States*, 524 U.S. 308, 309 (1998) (discussing § 922(g)(1)).  Section 921(20), which defines the phrase "crime punishable by imprisonment for a term exceeding one year" as used in § 922(g)(1), provides in relevant part that the phrase does include "[a]ny conviction . . . for which a person . . . has had his civil rights restored . . . , unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms."  18 U.S.C. § 921(20); *see also*, *Caron*, 524 U.S. at 309.  Whether civil rights have been restored depends on the law of the state, and may be effected either on a case-by-case basis or by a broad general rule.  *See Caron*, 524 U.S. at 313-14.  "It is the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether or not he has violated the statute."  Defendant's claim fails for two reasons.

First, defendant cannot show that his civil rights had been restored at the time he possessed the firearm in this case.  In *United States v. Driscoll*, 970 F.2d 1472 (6th Cir. 1992), the court held that Michigan law did not fully restore a convicted felon's civil rights under §§ 921(20) and 922(g)(1) because Michigan law still restricted a felony's right to sit on a jury.  *See id*. at 1478.  After the Michigan Court of Appeals held that a convicted felon's right to serve on a jury is, in fact, restored once the sentence imposed has been fully discharged, *see Froede v. Holland Ladder & Mfg. Co.*, 207 Mich. App. 127, 523 N.W.2d 849 (1994), the Sixth Circuit concluded that *Driscoll* was no

longer good law, and that a Michigan felon's civil rights are in fact completely restored upon completion of his sentence. *See Hampton v. United States*, 191 F.3d 695, 699-702 (6th Cir. 1999). In response to *Froede* and *Hampton*, however, the Michigan legislature amended MICH. COMP. LAWS § 600.1307a to provide, in relevant part, that "[t]o qualify as a juror a person shall . . . [n]ot have been convicted of a felony." MICH. COMP. LAWS § 600.1307a(1)(e). This amendment became effective on October 1, 2003, and thus at the time of defendant's possession in 2004 his civil rights had not been restored, because he could not serve on a jury. And because he could not serve on a jury, his civil rights had not been restored within the meaning of § 921(20). *See United States v. Gilliam*, 979 F.2d 436, 437 (6th Cir. 1992); *Driscoll*, 970 F.2d at 1481.[8]

Second, even if defendant's civil rights had been restored by the time of his firearm possession, his right to possess a firearm had not been restored. Michigan law provides the following regarding a convicted felon's right to possess firearms:

> (1) Except as provided in subsection (2), a person convicted of a felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until the expiration of 3 years after all of the following circumstances exist:
> (a) The person has paid all fines imposed for the violation.
> (b) The person has served all terms of imprisonment imposed for the violation.
> (c) The person has successfully completed all conditions of probation or parole imposed for the violation.
> (2) A person convicted of a specified felony shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm in this state until all of the following circumstances exist:
> (a) The expiration of 5 years after all of the following circumstances exist:

---

[8]Importantly, *Hampton* disagreed with the court's conclusion in *Driscoll* that, as a matter of state law, a convicted felon is prevented from serving on a jury. Nothing in *Hampton* calls into question the *Driscoll* court's reasoning that if, in fact, a felon is prevented from serving on a jury then his civil rights have not been restored for purposes of § 921(20). Because the Michigan legislature effectively abrogated *Hampton* by amending § 600.1307a to explicitly preclude convicted felons from serving on juries, the reasoning of *Driscoll* controls once again.

(I) The person has paid all fines imposed for the violation.

(ii) The person has served all terms of imprisonment imposed for the violation.

(iii) The person has successfully completed all conditions of probation or parole imposed for the violation.

(b) The person's right to possess, use, transport, sell, purchase, carry, ship, rec receive, or distribute a firearm has been restored pursuant to . . . section 28.424 of the Michigan Compiled Laws.

\* \* \* \*

(6) As used in subsection (2), "specified felony" means a felony in which 1 or more of the following circumstances exist:

(I) An element of that felony is the use, attempted use, or threatened use of physical force against the person or property of another, or that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(ii) An element of that felony is the unlawful manufacture, possession, importation, exportation, distribution, or dispensing of a controlled substance.

(iii) An element of that felony is the unlawful possession or distribution of a firearm.

(iv) An element of that felony is the unlawful use of an explosive.

(v) The felony is burglary of an occupied dwelling, or breaking and entering an occupied dwelling, or arson.

MICH. COMP. LAWS § 750.224f.

Because defendant was previously convicted of a drug offense, the restoration of his right to possess a firearm was governed by § 750.224f(2). For restoration to have occurred under that provision, not only must five years have elapsed since the expiration of defendant's sentence and parole on that prior conviction, but defendant must have also had his right to possess a firearm restored under MICH. COMP. LAWS § 28.424 pursuant to § 750.224f(2)(b). And § 28.424, in turn, requires a felon subject to § 750.224f(2) to apply for and receive from the county concealed weapons licensing board restoration of his right to possess a firearm. *See* MICH. COMP. LAWS § 28.424.

Although defendant contends that his civil rights were restored, he does not assert, and nothing in the record supports, that he received a restoration of his right to possess firearms from the county licencing board. Thus, pursuant to § 750.224(f)(2)(b), his right to possess firearms had not been restored by the time of his possession forming the basis of the charge in this case, and therefore his prior conviction served as a predicate felony under 18 U.S.C. §§ 921(20) and 922(g)(1). *See United States v. Gauthier*, 12 Fed. Appx. 315, 316-17 (6th Cir. 2001); *United States v. Carnes*, 113 F. Supp. 2d 1145, 1160 (E.D. Mich. 2000) (Rosen, J.); *United States v. Green*, 109 F. Supp. 2d 688, 690 (E.D. Mich. 2000) (Duggan, J.).[9]

Further, even if defendant's right to possess a firearm in general had been restored, he was still prevented by Michigan law from carrying a concealed weapon. Michigan law provides that a person may obtain a licence to carry a concealed weapon only if "the applicant has *never* been convicted of a felony . . . ." MICH. COMP. LAWS § 28.425b(f) (emphasis added). Although defendant was not charged in this case with carrying a concealed weapon, in *Caron, supra*, the Supreme Court adopted an "all or nothing" approach to §§ 921(20) and 922(g)(1). Under this approach, the state law restriction imposed by § 28.425b(f) rendered defendant ineligible to possess any firearm under § 921(20) and 922(g)(1). *See United States v. Kenny*, 375 F. Supp. 2d 622, 625-26 (E.D. Mich. 2005) (Lawson, J.); *United States v. Brown*, 69 F. Supp. 2d 925, 938-44 (E.D. Mich. 1999) (Rosen, J.). For these reasons, defendant was ineligible to posses a firearm under §§ 921(20) and 922(g)(1), and thus counsel was not ineffective for failing to challenge the § 922(g)(1) charge

---

[9]Although § 750.224f was enacted after the prior drug charge which formed the predicate felony for defendant's § 922(g)(1) conviction, it was in effect when defendant possessed the firearm at issue in this case. Its application in this case to determine whether defendant had the right to possess the gun, therefore, does not violate the Ex Post Facto Clause. *See Melton v. Hemingway*, 40 Fed. Appx. 44, 45 (6th Cir. 2002); *Hervey v. United States*, 105 F. Supp. 2d 731, 735 (E.D. Mich. 2000) (O'Meara, J.).

and conviction.

### h. Failure to Advise Defendant of His Right Not to Testify

Defendant next contends that counsel was ineffective for failing to advise him of his right not to testify at trial. Defendant does not contend that counsel was ineffective with respect to the decision to testify. Rather, as explained in his reply to the government's answer, he contends that "counsel was ineffective for failing to advise [him] that he had a fifth amendment right not to answer questions that would incriminate him and that [he] had a right to invoke that right during his testimony at trial." Traverse, at 14. Contrary to defendant's argument, however, he had no such right to selectively invoke his Fifth Amendment privilege against self-incrimination. "It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. The privilege is waived for the matters to which the witness testifies, and the scope of the waiver is determined by the scope of relevant cross-examination." *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (citations and internal quotation omitted). As the Supreme Court explained long ago:

> The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he himself has put in dispute. It would make the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.

*Brown v. United States*, 356 U.S. 148, 155-56 (1958).

Nor can defendant show that counsel was ineffective for eliciting incriminating information from him on direct examination. Counsel's actions were consistent with what was, in light of the

34

evidence against defendant, a reasonable defense strategy. Specifically, counsel sought to highlight what the defense viewed as problems in the police investigation, and to attack the methamphetamine charge, which carried potentially the most severe penalty, and certainly the most severe mandatory minimum sentence. Had counsel not brought these matters out on direct examination, there is no reason to believe that the government would not have elicited the same information on cross-examination. And, contrary to defendant's argument, as explained above he would not have been able to selectively invoke his Fifth Amendment privilege on cross-examination by the government to prevent these admissions. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### i. Failure to Challenge False Information Presented to Grand Jury

Finally, defendant contends that counsel was ineffective for failing to challenge the government's presentation of false information to the grand jury. This claim fails, for two reasons.

First, defendant's claim is based on the allegedly false information contained within the search warrant affidavit, which defendant contends was also presented to the grand jury. As explained above, however, defendant has failed to point to any false information contained within the search warrant affidavit. The difference in language employed by Lt. Greene in referring variously to "letters" and "tips" does not amount to false information, and defendant has failed to raise an inference that Lt. Greene did not, in fact, obtain and review defendant's electrical usage records.

Second, defendant cannot show that he was entitled to dismissal of the indictment even if his allegations are true. Dismissal of an indictment based on prosecutorial misconduct before the grand jury is appropriate only where the prosecutor engages in misconduct which prejudices the

defendant. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 255-56 (1988). Here, the Superceding Indictment was not based on any information contained within the affidavit for the search warrant, but rather was based on the fruits of that search. Defendant does not contend that the government presented any false evidence to the grand jury regarding the fruits of the search. Any false evidence in the search warrant affidavit, while it may provide a basis for suppressing the fruits of the search at trial, does not call into question the validity of the indictment itself. As the Supreme Court has explained, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge . . . even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." *United States v. Calandra*, 414 U.S. 338, 344-45 (1974). For this reason, and because the exclusionary rule suppresses evidence at trial in order to deter illegal police conduct, the Fourth Amendment exclusionary rule has no application to a grand jury investigation. *See id.* at 349-55. Simply put, the Fourth Amendment "does not prevent the use of illegally seized evidence in grand jury proceedings," *Stone v. Powell*, 428 U.S. 465, 485 (1976); *see also*, *In re Berkley & Co., Inc.*, 629 F.2d 548, 552 (8th Cir. 1980) ("A claim of illegal search and seizure . . . is not grounds for excluding evidence from the grand jury."), and an indictment founded on illegally seized evidence is "not thereby rendered defective." *United States v. Lawson*, 502 F. Supp. 158, 166 (D. Md. 1980). Thus, even if defendant could show that the search of his home was illegal, this provided no basis for quashing the indictment. Accordingly, counsel was not ineffective for failing to challenge the indictment on this basis.

3. *Ineffective Assistance of Appellate Counsel*

Defendant next contends that his appellate counsel was ineffective in a number of respects. Specifically, he contends that counsel was ineffective for failing to raise on direct appeal the following claims: (1) a challenge to the felon in possession conviction; (2) a claim relating to the anonymous tip letters; (3) a claim of witness intimidation; and (4) his prosecutorial misconduct claims

In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, defendant's underlying ineffective assistance of trial counsel claims are without merit, because the substantive claims underlying those trial counsel claims are without merit. Thus, defendant cannot show that he was prejudiced by appellate counsel's failure to raise these claims on direct appeal. Likewise, as explained below, defendant's underlying prosecutorial misconduct claims are without merit, and thus he cannot show that he was prejudiced by counsel's failure to raises these claims on direct appeal. Accordingly, the Court should conclude that defendant is not entitled to relief on his ineffective assistance of appellate counsel claims.

4.     *Prosecutorial Misconduct*

Defendant next contends that the prosecutor committed misconduct in several respects. First, he contends that the prosecutor suppressed exculpatory evidence and presented perjured testimony. Second, he contends that the prosecutor intimidated a witness into invoking his Fifth Amendment privilege against self-incrimination. Third, he argues that the prosecutor made improper statements during closing argument.

a. *Exculpatory Evidence/Perjured Testimony*

Defendant contends that the prosecutor either withheld exculpatory evidence or presented false evidence at his trial. Specifically, defendant challenges: (1) the prosecutor's failure to disclose the two anonymous letters; (2) Charlie McCarthy's invocation of his right to remain silent and the prosecutor's subsequent refusal to grant McCarthy immunity; and (3) the prosecutor's coaching of witnesses outside the courtroom. The Court should conclude that defendant is not entitled to relief on these claims.

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760, 766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

Similarly, it is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959). This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id*. at 269. It is equally well established, however, that petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). Thus, to succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material. *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show

that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'")'. In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

Here, defendant has failed to show either that the government suppressed evidence within the meaning of *Brady* or knowingly presented perjured testimony. As explained above, defendant had no constitutional right to the disclosure of the identity of the tipster or the anonymous letters. The prosecution did disclose those letters to the Court, which reviewed them *in camera*. After that review, the Court determined that the letters were irrelevant to the issues in the case. Therefore, defendant cannot show that the prosecution unconstitutionally suppressed this evidence, or that it constituted material, exculpatory evidence under *Brady*.

Likewise, the prosecutor did not suppress evidence by failing to grant McCarthy immunity, nor did McCarthy's invocation of his right to remain silent deprive defendant of a fair trial. "A defendant's right of confrontation and compulsory process under the Sixth Amendment is not violated when a witness invokes her right against self incrimination under the Fifth Amendment." *United States v. Dago*, 813 F. Supp. 736, 746 (D. Colo. 1992), *aff'd*, 33 F.3d 63 (10th Cir. 1994) (Table). "The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege." *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978). Thus, "the courts have generally agreed that 'the Sixth Amendment's right of compulsory process must give way to the subpoenaed witness' personal Fifth Amendment right against self-incrimination.'" *Royal v. Maryland*, 529 F.2d 1280, 1283 (4th Cir. 1976) (dissenting op.) (quoting *Johnson v. Johnson*, 375

F. Supp. 872, 875 (W.D. Mich. 1974); *see also, United States v. Hernandez*, 962 F.2d 1152, 1161 (5th Cir. 1992); *United States v. Paris*, 827 F.2d 395, 399 (9th Cir. 1987); *United States v. George*, 778 F.2d 556, 563 (10th Cir. 1985); *United States v. Alexander*, 735 F. Supp. 923, 927 (D. Minn. 1990).

In addition, the trial judge is afforded broad discretion in determining the merits of a claim of privilege. *Hernanadez*, 962 F.2d at 1161. Further, "a district court certainly has the discretion to ensure that a witness in danger of unwittingly incriminating himself is aware of his constitutional privilege." *United States v. Valdez*, 16 F.3d 1324, 1331 (2d Cir. 1994); *see also, United States v. Smith*, 997 F.2d 674, 680 (10th Cir. 1993); *United States v. Arthur*, 949 F.2d 211, 215-16 (6th Cir. 1991); *United States v. Silverstein*, 732 F.2d 1338, 1345 (7th Cir. 1984); *United States v. Colyer*, 571 F.2d 941, 946 (5th Cir. 1978); *United States v. Morrison*, 535 F.2d 223, 228 (3d Cir. 1976). Of course, the trial judge must be careful in exercising this discretion that he is not unduly suggestive or intimidating, thereby coercing a witness into invoking the privilege. *Valdez*, 16 F.3d at 1331; *Arthur*, 949 F.2d at 215; *see also, Webb v. Texas*, 409 U.S. 95, 97-98 (1972) (per curiam). Defendant does not suggest that the Court in any way erred in determining that McCarthy had properly invoked, upon the advice of counsel, his Fifth Amendment privilege.

Nor was the prosecutor required to grant McCarthy immunity so that defendant could present his testimony at trial. "As a general matter, 'a district court is without authority to either grant immunity to a witness who asserts his Fifth Amendment privilege against self incrimination, or to force the government to do so.'" *United States v. Eady*, 98 Fed. Appx. 440, 443 (6th Cir. 2004) (quoting *United States v. Talley*, 164 F.3d 989, 997 (6th Cir.1999)). A prosecutor is required to grant immunity to a defense witness only in exceptional circumstances, such as where the prosecutor

has selectively granted immunity to its own witnesses, or to remedy prosecutorial misconduct which caused the witness to invoke his Fifth Amendment privilege. *See id.*; *United States v. Emuegbunam*, 268 F.3d 377, 401 (6th Cir.2001); *Blissett v. Lefevre*, 924 F.2d 434, 441-42 (2d Cir. 1991). Here, the prosecutor did not selectively grant immunity to any prosecution witnesses, and as discussed in the following section there was no prosecutorial misconduct which caused McCarthy to invoke his Fifth Amendment privilege. Thus, defendant was not denied a fair trial by the prosecutor's refusal to grant immunity to McCarthy.

Finally, defendant has failed to establish that the prosecutor knowingly presented any perjured testimony. Although defendant makes a general allegation that the prosecution witnesses lied in order to protect Lt. Ostin, he does not point to any specific testimony which amounts to perjury, nor does he explain how the prosecutor knew that this testimony was perjured. The mere fact, as alleged by defendant, that "the prosecution and the officers testifying against [defendant] were in the hallway outside the courtroom discussing testimony within a football huddle," Amended Mot., at 16, does not establish that the prosecution presented perjured testimony. Nor was there anything improper in the prosecutor discussing the matter with the officers involved in the case. *See Smith v. Kelly*, No. 7:07CV00536, 2008 WL 345838, at *11 (W.D. Va. Feb. 6, 2008). Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### b. Witness Intimidation

Defendant also contends that the prosecution intimidated a witness into invoking his Fifth Amendment privilege against self-incrimination. This claim relates not to McCarthy, but to Ed Daugherty. Defendant claims that prior to being called, Daugherty was greeted in the hallway by police officers, and later threatened with prosecution if he testified falsely. The Court should

conclude that defendant is not entitled to relief on this claim.

"Warnings concerning the dangers of [testifying] can be emphasized to the point that they compel a witness, by threat or intimidation, not to testify or to invoke the Fifth Amendment," thus implicating a defendant's constitutional right to present a defense. *United States v. Blanche*, 149 F.3d 763, 768 (8th Cir. 1998) (citing *Webb*, 409 U.S. at 97-98); *see also*, *United States v. Pierce*, 62 F.3d 818, 832 (6th Cir. 1995). Although *Webb* itself dealt with coercive warnings by the trial judge, "the conduct of prosecutors, like the conduct of judges, is unquestionably governed by *Webb*." *United States v. Vavages*, 151 F.3d 1185, 1189 (9th Cir. 1998). However, not every warning of the dangers to the witness of testifying is improper; indeed, it is often prudent for a prosecutor or the court to advise an unrepresented witness about the dangers of testifying. *See Vavages*, 151 F.3d at 1189; *Pierce*, 62 F.3d at 832. Thus, "[w]here the prosecutor simply provides the witness with a truthful warning, no constitutional violation occurs." *United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991); *see also*, *Pierce*, 62 F.3d at 832. A court's or prosecutor's warning is coercive only where the substance of the warning is "a threat over and above what the record indicates was timely, necessary, and appropriate." *Jackson*, 935 F.2d at 847 (internal quotation omitted). In short, "[a] defendant's constitutional rights are implicated only where the prosecutor or trial judge employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision to testify." *Vavages*, 151 F.3d at 1189.

At trial, defendant called Daughtery as a witness. At that time, the prosecutor informed the Court at a sidebar that cross-examination may require Daughtery to incriminate himself, and that Daughtery should be given the opportunity to consult with counsel. The Court informed Daughtery of the nature of the case and the subject of the questions that would be asked if he testified.

Daughtery indicated that he wished to speak with counsel before testifying. *See* Trial Tr., dated 6/23/05, at 205-09. The Court appointed Andrew Wise of the Federal Defender's Office to represent Daughtery. *See id*. at 214. After consulting with counsel, Daughtery indicated that he wished to invoke his Fifth Amendment privilege. *See id*. at 231-32. Daughtery's counsel also indicated that Daughtery felt threatened by the case agent coming up to him in the hallway and introducing himself and other officers. *See id*. at 234. The following day, defense counsel asked to make a separate record regarding this exchange in the hallway. The Court declined counsel's request, explaining:

> I think at most the conduct was that the agent introduced himself to him and other police officers of the police department of Clinton Township. So in that situation, the facts speak for themselves. I don't think they show intimidation. The fact that the witness may have felt intimidated because he has the potential for prosecution because of evidence relating to him being on the chart and things like that, and the reality of the situation which is that he did – he was advised in court, a statement was made just, you know, with regard to hello, and these guys they were not in uniform, and so we'll move on . . . .

*Id*., dated 6/24/05, at 13. Counsel further argued that the prosecutor intimidated Daughtery by stating, in the presence of Daughtery, "a laundry list of possible things where Mr. Daughtery could face exposure." *Id*. at 14. The Court rejected this argument, reasoning that the prosecutor's statement "was in response to the Court asking him to explain because [Daughtery's] attorney was here. . . . He was responding to the Court's question what was the situation so the lawyer could advise him." *Id*.

With respect to defendant's claim that the case agent intimidated Daughtery, as the above recitation shows the Court has already rejected this claim as a factual matter. Although Daughtery claimed to have felt intimidated, his counsel did not assert in Court any actual intimidating actions taken by the case agent or Clinton Township police officers. Rather, Daughtery reported to counsel

only that the case agent had introduced himself and the other officers. The Court found that this did not constitute intimidation, and defendant has pointed to nothing new to call into question the Court's previous resolution of this issue at the time the events occurred.

With respect to defendant's claim that Daughtery was intimidated by the threat of prosecution, the record establishes no improper intimidation. As noted above, a prosecutor's or judge's conduct is coercive only where the substance of the warning is "a threat over and above what the record indicates was timely, necessary, and appropriate," and "[w]here the prosecutor simply provides the witness with a truthful warning, no constitutional violation occurs." *Jackson*, 935 F.2d at 847 (internal quotation omitted). Here, the prosecutor and the Court merely provided Daughtery with truthful information regarding his possible exposure to criminal liability if he testified. The warnings were not accompanied by advice as to what Daughtery should do, nor were the warnings beyond what the evidence suggested might be exposed by Daughtery's testimony. Daughtery was given the opportunity to consult with counsel, and upon doing so voluntarily chose to invoke his privilege against self-incrimination. In these circumstances, defendant has failed to show that Daughtery was intimidated into invoking his privilege. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

### c. Comments

Defendant also contends that the prosecutor "fraudulently presented misleading statements of non fact to the jury . . . during closing argument." Amended Mot., at 17. Because the record does not support defendant's claim, the Court should conclude that defendant is not entitled to relief on these claims.

In each instance cited by defendant, the prosecutor's comments were supported by evidence

introduced at trial. For instance, defendant challenges the prosecutor's comment that the shotgun was "propped up on top of the bed and where the officers found it," made in support of the charge that defendant possessed the shotgun during and in relation to his drug crime. Trial Tr., dated 6/30/05, at 21. Officer Graleski, while not testifying that the gun was "propped up" on the bed, did testify that the shotgun was near the bed, within arm's reach. *See id*., dated 6/22/05, at 147. Defendant also challenges the prosecutor's statement that defendant told the officers conducting the search that he had some crystal meth in his closet. *See id*., dated 6/30/05, at 26. Again, however, Officer Graleski testified that defendant told him there was methamphetamine in his closet, *see id*., dated 6/22/05, at 136-37, 139-40, 179, and Agent Bailey testified that defendant admitted that he accepted the methamphetamine from McCarthy, stored it, and sold some of it to Mark Fisher, *see id*., dated 6/23/05, at 25-26. Defendant also challenges the prosecutor's comments that defendant admitted to distributing some methamphetamine to Mark Fisher in exchange for $40. *See id*, dated 6/30/05, at 29, 35, 75. Agent Bailey testified that defendant admitted as much. *See id*., dated 6/23/05, at 26, 31-32.

Defendant also argues that the prosecutor improperly argued that defendant was a felon in possession of a gun, despite the exception in 18 U.S.C. § 921(a)(20). As noted above, however, defendant does not come within the § 921(a)(20) exception, and defendant was properly convicted on this charge. Thus, the prosecutor did not commit misconduct by arguing that the facts supported the charge. Likewise, the prosecutor did not refer to defendant as "the Johnny Appleseed of meth." Rather, the prosecutor was arguing to the jury, correctly under the law, that the issue was not sale, but transfer of possession, and thus that "[t]he defendant can be the Johnny Appleseed of methamphetamine to the community, and that would count as distribution." Trial Tr., dated 6/30/05,

at 31. While colorful, this comment was a correct statement of the law, and it did not assert that defendant was in fact "the Johnny Appleseed of methamphetamine." Thus, the comment was not improper. Finally, the prosecutor's comment explaining why the methamphetamine charge was added to the indictment later–because the government did not have the laboratory report at the time of the original Indictment–was a fair response to defendant's assertion that the charge was added vindictively after a plea agreement could not be reached. And contrary to defendant's argument this statement is not an admission by the prosecution that "he was aware of the his violation of" of 18 U.S.C. § 3162 because, as explained above, the superceding indictment did not violate § 3162. Accordingly, the Court should conclude that defendant is not entitled to relief on his prosecutorial misconduct claims.

5.      *Mandatory Minimum Sentence*

Finally, in his most recent amendment to his § 2255 motion, defendant contends that his five year mandatory consecutive sentence imposed for possessing a gun in furtherance of his drug trafficking crime was improper. The Court should conclude that this claim is without merit.

Section 924(c), the statute at issue, provides in relevant part:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A)(I). The statute goes on to provide increased punishment if the firearm was brandished or discharged, and increased punishments based on the possession of certain types of

weapons or by repeat offenders.  *See id.* § 924(c)(1)(A)(ii)-(D).  Defendant contends that because

he was subjected to a 10 year mandatory minimum sentence on the methamphetamine conviction,

*see* 21 U.S.C. § 841(b)(1)(A)(vii), the exception set forth in the opening clause of § 924(c)(1)(A)

is applicable, precluding an additional five year consecutive sentence under that provision.  Both

the Second and, more importantly, Sixth Circuits have reached this conclusion.  *See United States*

*v. Williams*, 558 F.3d 166, 171 (2d Cir. 2009) (clause covers "minimum sentences for ... offenses

arising from the same criminal transaction or operative set of facts"); *United States v. Almany*, 598

F.3d 238, 241 (6th Cir. 2010) (clause applies whenever a defendant "is subject" to a greater

mandatory minimum).

Nevertheless, the Supreme Court has recently rejected *Williams* and *Almany*, as well as the

claim made by defendant here.  In *Abbott v. United States*, ___ U.S. ___, ___ S. Ct. ___, 2010 WL

4569898 (Nov. 15, 2010), the Court held that the first portion of the "except" clause refers to the

graduated punishments within § 924(c) itself.  The second portion, referencing "any other provision

of law," means that "[i]f another provision of the United States Code mandates a punishment for

using, carrying, or possessing a firearm in connection with a drug trafficking crime or crime of

violence, and that minimum sentence is longer than the punishment applicable under § 924(c), then

the longer sentence applies."  *Id*. at *11.  In other words:

> a defendant is subject to a mandatory, consecutive sentence for a § 924(c) conviction,
> and is not spared from that sentence by virtue of receiving a higher mandatory
> minimum on a different count of conviction. Under the "except" clause as we
> comprehend it, a § 924(c) offender is not subject to stacked sentences for violating
> § 924(c). If he possessed, brandished, and discharged a gun, the mandatory penalty
> would be 10 years, not 22. He is, however, subject to the highest mandatory
> minimum specified for his conduct in § 924(c), unless another provision of law
> directed to conduct proscribed by § 924(c) imposes an even greater mandatory
> minimum.

*Id.* at *5.

Here, defendant was subject to a greater mandatory minimum sentence for possessing methamphetamine pursuant to 21 U.S.C. § 841. That provision, however is not "directed to conduct proscribed by § 924(c)," and thus cannot suffice to invoke the except clause of § 924(c)(1)(A). Nor does defendant's separate conviction for being a felon in possession under § 922(g)(1) call into question his sentence on the § 924(c)(1)(A) conviction. That conviction subjected him to a maximum 10 year penalty, but did not subject him to any mandatory minimum sentence. *See* 18 U.S.C. § 924(a)(2) (setting forth penalty provision for, *inter alia*, § 922(g) violation). And by its terms the except clause in § 924(c)(1)(A) applies only when a "greater *minimum* sentence is otherwise provided . . . ." 18 U.S.C. § 924(c)(1)(A). Because defendant's claim has been foreclosed by the Supreme Court's decision in *Abbott*, the Court should conclude that he is not entitled to relief on this claim.

F.  *Recommendation Regarding Certificate of Appealability*

1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of a § 2255 motion unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack*

*v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the movant is obviously less than the burden for establishing entitlement to § 2255 relief; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings in the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2255. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." Fed. R. App. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of defendant's § 2255 motion, the Court should also conclude that defendant is not entitled to a certificate of appealability, for the reasons explained above.  The Court's resolution of defendant's ineffective assistance of trial counsel claims is not reasonably debatable.  With respect to the search issue, it is beyond debate that the police did not require a warrant to search defendant's electrical usage records, and these records coupled with the anonymous tips and thermal imaging results clearly provided probable cause for a search.  With respect to counsel's failure to challenge the confrontation violation, it is clear as a matter of law that the failure to disclose the identity of the tipster did not deprived defendant of his right to confront the witnesses or to due process of law.  It is not reasonably debatable that defendant has failed to point to any actual witnesses that counsel should have called that would have provided material, favorable evidence, or that he has failed to demonstrate that any juror was biased against him.  Thus, the resolution of defendant's ineffective assistance claims relating to these issues is not reasonably debatable.  Likewise, defendant's claims that the indictment was subject to dismissal on the basis of 18 U.S.C. § 3162 and the presentation of false information to the grand jury, and his claim that he was not subject to conviction under 18 U.S.C. § 922(g)(1), are without merit as a matter of law, and thus the resolution of his related ineffective assistance claims is not reasonably debatable.  And because defendant had no right to selectively invoke his right to remain silent, it is not debatable that counsel's failure to advise him of such a right did not amount to ineffective assistance of counsel.

The resolution of defendant's claim that the prosecutor withheld exculpatory evidence is also

not reasonably debatable. As explained above, the tipster did not provide any evidence at trial, and defendant has failed to show that he had any right to disclosure of the tipster's identity. And as explained above the record conclusively demonstrates that defendant is not entitled to relief on his claims alleging witness intimidation or improper comments by the prosecutor. The resolution of defendant's § 924(c) sentencing claim is not reasonably debatable in light of the Supreme Court's recent rejection of that very claim. Finally, because the resolution of each of the underlying claims is not reasonably debatable, it follows that the resolution of defendant's ineffective assistance of appellate counsel claim is not reasonably debatable. Accordingly, the Court should conclude that defendant is not entitled to a certificate of appealability.

G. *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. If the Court accepts this recommendation, the Court should also deny defendant a certificate of appealability. Finally, the Court should deny defendant's motions for default judgment, to unseal the grand jury transcripts, and for a new trial, for the reasons explained above.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:   December 7, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                Plaintiff/Respondent,

vs.

GEORGE STEVEN SCANTLAND,

                Defendant/Movant.

_____/

CRIMINAL NO. 04-80773
CIVIL ACTION NO.  08-13097

DISTRICT JUDGE PAUL J. BORMAN

MAGISTRATE JUDGE PAUL J. KOMIVES


<u>PROOF OF SERVICE</u>


      I, the undersigned, hereby certify that on the **7th day of  December 2010**, I served a copy of the Report and Recommendation on: (1) Defendant's Motion to Unseal Grand Jury Transcripts (docket #82); (2) Defendant's Motion for New Trial (docket #85); (3) Defendant's Motion to Vacate Sentence (docket #87); and (4) Defendant's Motion for Default Judgment (docket #89) on *George Steven Scantland, #39006-039, Federal Satellite Low/Elkton, P.O. Box 10, Lisbon OH 44432* by first class U.S. mail and *Assistant U.S. Attorney Matthew J. Schneider* by electronic means*.*


                            s/Kim Grimes_____
                            Acting in the absence of
                            Eddrey Butts, Case Manager